IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| FLEMING STEEL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 02-828 |
| | ) |
| W.M. SCHLOSSER COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |
| | |
| W.M. SCHLOSSER COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 03-1338 |
| | ) (Consolidated with Civil |
| | ) Action No. 02-828) |
| CONTINENTAL CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM

I

Before the Court is the motion of W.M. Schlosser Company,
Inc. ("Schlosser") under Rule 59(e) of the Federal Rules of Civil
Procedure to alter or amend the Court's Judgment Order dated July
14, 2006. (Document No. 117). For the reasons set forth below,
the motion will be granted in part and denied in part.

II

The history of the above-captioned consolidated cases may be
summarized as follows:

In February 2000, the United States Navy awarded the prime
contract for a project to construct an acoustical aircraft

1

enclosure at the Oceana Naval Air Station in Virginia Beach, Virginia ("the Oceana project") to Schlosser. Several months later, Schlosser entered into a subcontract with Fleming Steel Company ("Fleming Steel") for the construction of acoustical intake sliding doors for the Oceana project. On June 8, 2000, Continental Casualty Company ("Continental Casualty") issued a bond to guarantee Fleming Steel's performance of the subcontract with Schlosser.

Issues arose concerning Fleming Steel's compliance with the contract specifications for the acoustical intake sliding doors, which ultimately resulted in Schlosser's termination of the subcontract with Fleming Steel in March 2002. On May 1, 2002, Fleming Steel filed this civil action against Schlosser for breach of contract, alleging that Schlosser had terminated the parties' subcontract for its own convenience, rather than for cause. Based on this allegation, Fleming Steel sought damages from Schlosser under Article 29 of the subcontract.[1] In its answer to the complaint, Schlosser filed a counterclaim against Fleming Steel for breach of contract, seeking to recover the costs incurred to correct and/or complete Fleming Steel's work on the Oceana project.

---

[1]In the event of Schlosser's termination of the subcontract for convenience, Article 29 provided that Fleming Steel was entitled to recover "the actual cost for work and labor in place, plus five percent (5%) overhead and profit, or a prorated percentage of completion, whichever is less...."

2

Approximately a year later, in April 2003, Schlosser filed a civil action against Continental Casualty in the United States District Court for the Eastern District of Virginia. In the Virginia case, Schlosser sought recovery of the costs incurred to correct and/or complete Fleming Steel's work on the Oceana project under the performance bond issued by Continental Casualty in June 2002. On September 11, 2003, the Virginia case was transferred to this Court and docketed at Civil Action No. 03-1338.

On March 17, 2006, a Special Master was appointed by the Court to perform an accounting of the costs that Schlosser claimed to have incurred to correct and/or complete Fleming Steel's work on the Oceana project.[2] Three days later, the Court consolidated Civil Action No. 03-1338 with this case, and the later-filed case was closed.

---

[2] With respect to the substantial delay between the transfer of the Virginia case to this Court and the appointment of a Special Master to perform an accounting of the costs sought by Schlosser in its claims against Fleming Steel and Continental Casualty, the parties moved for several extensions of the discovery deadline. Following the close of discovery on November 15, 2004, Fleming Steel and Schlosser filed cross-motions for summary judgment. The summary judgment motions, which were fully briefed by April 2005, were denied in August 2005, and a non-jury trial was scheduled for November 28, 2005. Due to the illness of this member of the Court, however, the trial was continued. No further action was taken in the case until March 2006, when a conference to discuss the possibility of settlement was scheduled.

3

On April 5, 2006, Schlosser moved for summary judgment on the issue of liability with respect to its counterclaim against Fleming Steel. The Court granted Schlosser's motion on July 10, 2006, concluding that the undisputed facts established that Schlosser's termination of the subcontract with Fleming Steel was for cause (i.e., Fleming Steel's failure to fabricate components of the acoustical intake sliding doors which complied with the contract specifications in a timely manner). Therefore, Schlosser could not be liable to Fleming Steel for wrongful termination of the subcontract and Fleming Steel was liable to Schlosser for breach of the subcontract.

The only remaining issue in the case was the amount of damages to which Schlosser was entitled on its claims against Fleming Steel and Continental Casualty. On July 14, 2006, the Court adopted the Report and Recommendation of the Special Master regarding the costs incurred by Schlosser as a result of Fleming Steel's failure to construct the acoustical intake sliding doors for the Oceana project in accordance with the contract specifications, and judgment in the amount of $354,646.43 was entered in favor of Schlosser and against Fleming Steel for breach of the subcontract and in favor of Schlosser and against Continental Casualty as surety for Fleming Steel's performance of the subcontract. On July 18, 2006, Fleming Steel and Continental

Casualty filed a motion for reconsideration, and, on July 21, 2006, they filed a Notice of Appeal.[3]

On July 21, 2006, in conjunction with their Notice of Appeal from the Judgment Order dated July 14, 2006, Fleming Steel and Continental Casualty filed a motion pursuant to Fed.R.Civ.P. 62(d) for approval of a supersedeas bond to stay execution of the judgment. The motion, which represented that Fleming Steel was providing a supersedeas bond in the form of a certified check in the amount of $425,576.00, was granted on July 27, 2006.[4] Immediately thereafter, Fleming Steel and Continental Casualty filed a motion pursuant to Fed.R.Civ.P. 67, seeking to deposit the sum of $425,576.00 with the Clerk of Court for deposit into

_____

[3]In light of the Notice of Appeal, the Court dismissed the motion of Fleming Steel and Continental Casualty for reconsideration for lack of jurisdiction on July 24, 2006. Subsequently, the Court concluded that the Notice of Appeal had not deprived the Court of jurisdiction to rule on the motion for reconsideration, and the motion was denied on August 7, 2006.

[4]With respect to the discrepancy between the amount of the judgment entered in Schlosser's favor on July 14, 2006 and the amount of the proposed supersedeas bond, if a federal judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give. See Fed.R.Civ.P. 62(f). Under Pennsylvania law, the judgment obtained by Schlosser constitutes a lien on the judgment debtor's property, and, under Rule 1731(a) of the Pennsylvania Rules of Appellate Procedure, a party may obtain an automatic supersedeas bond to stay execution of a judgment by filing with the clerk of the lower court an appropriate security equal to 120% of the amount found due by the lower court.

5

an interest bearing account pending resolution of their appeal.[5]
The motion was granted the next day.

On July 28, 2006, Schlosser filed the present motion under
Fed.R.Civ.P. 59(e) to alter or amend the Judgment Order entered
on July 14, 2006 to include an award of attorneys' fees and costs
against Continental Casualty pursuant to the terms of the
performance bond, as well as an award of prejudgment interest
against both Fleming Steel and Continental Casualty under
Virginia law which applies in this diversity case. On August 17,
2006, the Court denied Schlosser's Rule 59(e) motion without
prejudice to its right to renew the motion in the event the
appeal filed by Fleming Steel and Continental Casualty was
resolved in Schlosser's favor.

---

[5]Fed.R.Civ.P. 67 provides:

**Rule 67. Deposit into Court**
**(a)** **Depositing Property.** If any part of the relief sought
    is a money judgment or the disposition of a sum of
    money or some other deliverable thing, a party - on
    notice to every other party and by leave of court - may
    deposit with the court all or part of the money or
    thing, whether or not that party claims any of it. The
    depositing party must deliver to the clerk a copy of
    the order permitting deposit.

**(b)** **Investing and Withdrawing Funds.** Money paid into court
    under this rule must be deposited and withdrawn in
    accordance with 18 U.S.C. §§ 2041 and 2042 and any like
    statute. The money must be deposited into an interest-
    bearing account or invested in a court-approved,
    interest-bearing instrument.

6

On July 9, 2008, the Court of Appeals for the Third Circuit dismissed the appeal filed by Fleming Steel and Continental Casualty for lack of jurisdiction.[6] Specifically, because the attorneys' fees and costs sought by Schlosser from Continental Casualty in its Rule 59(e) motion were based on the terms of the performance bond issued to guarantee Fleming Steel's work on the Oceana project and were an integral part of the relief sought by Schlosser from Continental Casualty, the Court of Appeals concluded that the Judgment Order dated July 14, 2006 was not a final order. Therefore, the Judgment Order was not appealable and the case was returned to this Court for disposition of Schlosser's Rule 59(e) motion.

By Order dated August 19, 2008, Schlosser was directed to file a brief in support of its Rule 59(e) motion, together with supporting documentation and affidavits, by September 10, 2008, and Fleming Steel and Continental Casualty were directed to file responses to Schlosser's submissions by September 17, 2008. Schlosser's brief and a response by Fleming Steel were filed in a timely manner, and, on October 2, 2008, the Court granted

---

[6]By letter dated September 20, 2006, the Court of Appeals notified the parties that the appeal had been listed for possible dismissal, and responses to the letter were filed by the parties on October 2, 2006. The next entry in the appellate docket is the order dated July 9, 2008, dismissing the case for lack of jurisdiction. The reason for the significant delay between notification of possible dismissal and dismissal is not apparent from the appellate docket.

7

Schlosser's motion to file a reply to Fleming Steel's response.[7] Schlosser's Rule 59(e) motion is now ripe for decision.

III

## Attorneys' Fees and Costs

The performance bond issued by Continental Casualty to guarantee Fleming Steel's work on the Oceana project provides, in relevant part, that Schlosser will be held harmless from "any and all loss, damage, and expense, **including costs and attorney's fees**," which Schlosser may sustain by reason of Fleming Steel's default on the subcontract. (emphasis added). Pursuant to this provision of the performance bond, Schlosser seeks amendment of the Judgment Order dated July 14, 2006 to include an award of attorney's fees and costs in the amount of $263,012.54, as of September 17, 2008, against Continental Casualty.

As noted in footnote 6, Continental Casualty did not respond to Schlosser's Rule 59(e) motion, despite being given the opportunity to do so. Fleming Steel, however, opposes Schlosser's motion for an award of attorneys' fees and costs against Continental Casualty. Noting that the obligation of a surety (Continental Casualty) to an obligee (Schlosser) generally can be no greater than that of the principal (Fleming Steel), Fleming Steel asserts that Schlosser is not entitled to recover

---

[7]The only response to Schlosser's Rule 59(e) submissions was received from Fleming Steel. Continental Casualty opted not to respond.

attorneys' fees and costs from Continental Casualty because the subcontract between Fleming Steel and Schlosser on the Oceana project did not provide for the recovery of attorneys' fees and costs in the event of a breach by Fleming Steel. After consideration, the Court finds Fleming Steel's argument unpersuasive.

Under Virginia law, the obligation of the surety is measured by that of the principal, "unless the bond provides otherwise, or the surety has been released by some act of the obligee." Cohen v. Mayflower Corp., 196 Va. 1153, 1164, 486 S.E.2d 860, 866 (1955). See also Southwood Builders, Inc. v. Peerless Ins., 235 Va. 164, 168-69, 366 S.E.2d 104, 107 (1988), quoting, C.S. Luck & Sons v. Boatwright, 157 Va. 490, 494-95, 162 S.E. 53, 54 (1932)("Sureties for hire ... must abide by their contracts and pay everything which by fair intendment can be charged against them. They act, not to accommodate others, but to promote their own interests, and are to be judged accordingly.").

In support of its opposition to Schlosser's motion for an award of attorneys' fees and costs against Continental Casualty, Fleming Steel relies heavily on the decision of the Court of Appeals for the Fourth Circuit in Ranger Construction Co. v. Prince William County School Board, 605 F.2d 1298 (4th Cir.1979). Such reliance is misplaced. In fact, as noted by Schlosser, the Ranger decision supports, rather than undermines, its motion for

9

an award of attorneys' fees and costs against Continental
Casualty.

In Ranger, a school construction contractor filed a breach
of contract action against a school board, and the school board
filed a counterclaim. The school board then terminated the
contract, alleging justification by reason of the contractor's
failures in performance. The issues of liability and damages
were bifurcated for trial and judgment on a verdict upholding the
school board's termination of the contract for cause was entered.
Subsequently, damages were awarded and all parties appealed.
With respect to the school board's right to recover the
attorney's fees incurred to establish the contractor's breach of
the construction contract, the Court of Appeals for the Fourth
Circuit stated:

\* \* \*

    Manifestly, then, under controlling Virginia law
attorney's fees incurred by the School Board in establishing
a breach of contract by Ranger, absent some specific
provision in the contract between the parties or statutory
authority for such a grant, could not be recovered against
Ranger. The School Board concedes there is no specific
provision in the contract for such an award and it points to
no Virginia statute giving a right to such an award. In
fact, the School Board seems to assume it has no such right
of recovery as against Ranger; it would base its right to
recover for such attorney's fees on the performance bond
given by Travelers. The performance bond given by
Travelers, however, makes no provision for the recovery of
such fees. It is just what its designation signifies; it is
a bond specifically conditioned on the performance by Ranger
of its obligations under the contract with the School Board.
The obligation of the Surety Travelers is accordingly to be
measured by the promises and specific liabilities of its

10

principal Ranger, and those obligations can be no broader or
more extensive than those of its principal. Federal Surety
Co. v. Basin Construction Co. (1931) 91 Mont. 114, 5 P.2d
775, 778; Al Smith's Plumbing & Heating Service, Inc. v.
River Crest, Inc. (Ct.App.La.1979) 365 So.2d 1122, 1127.
Since, as we have seen, Ranger is not liable for attorney's
fees incurred by the School Board in litigating its
liability for breach of the contract, it would seem a
fortiori the Surety Travelers cannot be liable.

There was some suggestion at argument that perhaps
certain language in the bond might be construed to include
by implication a right thereunder to recover attorney's
fees. The language relied on for this suggestion appears in
the provision of the bond dealing with the situation where
the Owner (the School Board) has declared the Contractor
(Ranger) in default. In that event, the bond gives the
Surety the right to complete the contract in accordance with
its terms by either contracting with others to complete the
project or, in conjunction with the Owner, contracting with
an agreed low bidder to complete the project. In completing
the contract under those circumstances, the Surety obligated
itself to "make available as Work progresses ... sufficient
funds to pay the cost of completion less the balance of the
contract price; But not exceeding, including other costs and
damages for which the Surety may be liable hereunder, the
amount set forth in the first paragraph hereof." (Italics
added). The italicized language, the School Board
intimated, might be considered to enlarge the Surety's
liability to include attorney's fees as an element of
damages in a suit to establish breach of the contract by the
Contractor.

It would seem, however, to be sufficient answer to this
suggestion of the School Board for an implied right under
the bond to attorney's fees that neither the School Board
nor Travelers proceeded under the provision of the
performance bond relied on to support this contention by the
School Board....

\* \* \*

Equally dispositive of this suggestion by the School
Board is the construction which has been judicially given
the italicized language in the performance bond. Uniformly
that language has been found to give no basis for an award
of attorney's fees. (citations omitted). As the court
remarked in National Union, "costs" are quite different from

11

and do not include "attorney's fees;" and in those cases in which attorney's fees have been granted, the bond almost without exception had specific language authorizing the recovery of attorney's fees for breach of the contract. Thus, in <u>Whitten v. Alling & Cory Co.</u>, (Tex.Civ.App.1975) 526 S.W.2d 245, 249, Writ refused, the bond went beyond guaranty of performance by the Contractor and included an obligation "to pay all costs and expenses including Attorney's fees incurred by appellee in attempting to collect any amount due under the guaranty." (Italics added). Similarly, in <u>Dale Benz, Inc. v. American Casualty Co.</u>, (9th Cir.1962) 303 F.2d 80, 85 n. 9, the surety's obligation expressly covered "expenses and attorney's fees incurred by the Contractor because of any default of (the) Subcontractor." ...

\* \* \*

605 F.2d at 1302-03.

Unlike the performance bond at issue in <u>Ranger</u>, the performance bond issued by Continental Casualty specifically provides for the recovery of attorneys' fees and costs incurred by Schlosser as a result of Fleming Steel's breach of the subcontract on the Oceana project. Thus, the general rule concerning the extent of liability which may be imposed upon a surety under a performance bond does not apply in this case.

Based on the foregoing, Schlosser's motion under Rule 59(e) to alter or amend the Judgment Order dated July 14, 2006 to include an award of attorneys' fees and costs against Continental Casualty will be granted. As to the amount of the award, Schlosser supported its motion for attorneys' fees and costs with detailed invoices and affidavits of counsel. In contrast, Continental Casualty did not respond to the motion, and Fleming

12

Steel did not take exception to any of the requested attorneys'
fees or costs. Under the circumstances, attorneys' fees and
costs in the amount of $263,012.54, as of September 17, 2008,
will be awarded to Schlosser under the performance bond issued by
Continental Casualty.

## Prejudgment Interest

In a diversity action in federal district court, whether to
award prejudgment interest is a question of state law. <u>W.A.</u>
<u>Wright, Inc. v. KDI Sylvan Pools, Inc.</u>, 746 F.2d 215, 219 (3d
Cir.1984). Accordingly, Virginia law applies to Schlosser's
motion for an award of prejudgment interest against Fleming Steel
and Continental Casualty.

With respect to the rationale underlying an award of
prejudgment interest, which is discretionary, in <u>Shepard v.</u>
<u>Capitol Foundry of Virginia, Inc.</u>, 262 Va. 715, 554 S.E.2d 72
(2001), the Supreme Court of Virginia stated:

\*   \*   \*

Prejudgment interest is normally designed to make the
plaintiff whole and is part of the actual damages sought to
be recovered." <u>Monesson Southwestern Ry. v. Morgan</u>, 486
U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988),
quoted in <u>Dairyland Ins. Co. v. Douthat</u>, 248 Va. 627, 631,
449 S.E.2d 799, 801 (1994). "'[I]nterest is allowed,
because it is natural justice that he who has the use of
another's money should pay interest for it.'" <u>J.W. Creech,</u>
<u>Inc. v. Norfolk Air Conditioning Corp.</u>, 237 Va. 320, 325,
377 S.E.2d 605, 608 (1989)(quoting <u>Jones v. Williams</u>, 6 Va.
85, 87, 2 Call 102, 106 (1799)).

\*   \*   \*

13

262 Va. at 722, 554 S.E.2d at 76.

Under Virginia law, the trier of fact "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va.Code Ann. § 8.01-382. In addition, Virginia law provides that "[t]he judgment rate of interest shall be an annual rate of six percent." Va.Code Ann. § 6.1-330.54.

In the present case, Schlosser seeks prejudgment interest from September 16, 2002 (the date on which the work to be performed by Fleming Steel on the Oceana project was completed by another company) to July 14, 2006 (the date on which the Court entered judgment in favor of Schlosser for the costs incurred to correct and/or complete Fleming Steel's work on the Oceana project). Prejudgment interest is sought not only on the costs incurred to correct and/or complete Fleming Steel's work on the Oceana project, but also on the attorneys' fees and costs incurred by Schlosser through September 17, 2008 as a result of Fleming Steel's breach of the subcontract.

Turning first to Fleming Steel's argument that Schlosser's motion for prejudgment interest is untimely,[8] the Court agrees with Schlosser that entry of the Judgment Order on July 14, 2006 was premature. The Judgment Order was based solely on the

---

[8]Fleming Steel contends that the opportunity for Schlosser to seek pre-judgment interest "passed with the entry of [the Court's] order closing this case." (Document No. 141, p. 10).

14

Special Master's recommendation regarding the costs incurred by Schlosser to correct and/or complete Fleming Steel's work on the Oceana project, and it was entered without a conference among the Court and counsel to determine whether Schlosser was entitled to any other damages. Simply put, the Court declines to penalize Schlosser for the premature entry of the Judgment Order by denying its motion for prejudgment interest as untimely.

With respect to the costs incurred to correct and/or complete Fleming Steel's work on the Oceana project ($354,646.43), there is no dispute that the costs were paid by Schlosser and the Court can discern no reason for denying interest to Schlosser on those costs for the period of time requested. Accordingly, an award of prejudgment interest will be entered in favor of Schlosser and against Fleming Steel and Continental Casualty with regard to the costs.

Turning to Schlosser's motion for prejudgment interest on the attorneys' fees and costs incurred as a result of Fleming Steel's breach of the subcontract ($263,012.54), the motion will be granted. Because the attorneys' fees and costs awarded to Schlosser are based on the terms of the performance bond provided by Continental Casualty to guarantee Fleming Steel's work on the Oceana project, they are part of the actual damages sustained by Schlosser in connection with Fleming Steel's breach of the

subcontract.[9]  Therefore, the attorneys' fees and costs are part of the "principal sum awarded" to Schlosser from Continental Casualty and are properly included in the calculation of prejudgment interest.[10]  See Va.Code Ann. § 8.01-382.

In computing Schlosser's award of prejudgment interest, the Court declines to compound the interest annually as requested by Schlosser.  The applicable Virginia statute is silent on the issue, and the Court concludes that simple interest is sufficient to compensate Schlosser for the use of its money between September 16, 2002 and July 14, 2006.  Under the circumstances, prejudgment interest in the sum of $81,284.96 will be awarded in favor of Schlosser and against Fleming Steel and Continental Casualty (based on the award of costs in the amount of $354,646.43, a simple interest rate of 6% and 3.82 years), and prejudgment interest in the sum of $60,282.47 will be awarded in favor of Schlosser and against Continental Casualty (based on the

_____

[9]This construction of the attorneys' fees and costs awarded to Schlosser accords with the Order entered by the Court of Appeals when dismissing the appeal filed by Fleming Steel and Continental Casualty for lack of jurisdiction.  The Court of Appeals specifically noted that the attorneys' fees sought by Schlosser from Continental Casualty "are based on a contractual provision and are an integral part of the relief sought." (Document No. 135).

[10]In contrast, the "principal sum awarded" to Schlosser from Fleming Steel is limited to the costs incurred to correct and/or complete Fleming Steel's work on the subcontract or $354,646.42.

16

award of attorneys' fees and costs in the amount of $263,012.54, a simple interest rate of 6% and 3.82 years).

## Postjudgment Interest

Even though the Court's jurisdiction in this case is based on diversity of citizenship, federal law applies to Schlosser's motion for postjudgment interest. Pierce Associates, Inc. v. Nemours Foundation, 865 F.2d 530, 548 (3d Cir.1988)("The matter [of postjudgment interest] is governed by 28 U.S.C. § 1961 notwithstanding that this is a diversity action."). Unlike prejudgment interest which is discretionary, postjudgment interest for all money judgments in federal district courts is mandatory.[11] Pace Communications, Inc. v. Moonlight Design, Inc., 31 F.3d 587 (3d Cir.1994)(Civil litigants who win money

---

[11]The federal postjudgment interest statute provides in relevant part:

### § 1961. **Interest**

**(a)** Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment....

**(b)** Interest shall be computed daily to the date of payment ..., and shall be compounded annually.

\*    \*    \*

28 U.S.C. § 1961.

17

judgments in district courts are statutorily entitled to postjudgment interest).

Postjudgment interest should be calculated based on the underlying judgment, as well as the award of prejudgment interest. Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193 (3d Cir.2004). As to an award of attorneys' fees and costs, postjudgment interest begins to accrue when the court fixes the amount of the award, not when the court first determined that such an award was appropriate. Eaves v. County of Cape May, 239 F.3d 527 (3d Cir.2001)(Where district court entered order stating that prevailing plaintiff in Title VII employment discrimination action was entitled to award of attorney fees, but failed to quantify amount of award until 16 months later, post-judgment interest began to accrue when court fixed amount of award, not when court first determined that award was appropriate). Thus, Schlosser's right to postjudgment interest on the award of attorneys' fees and costs against Continental Casualty will not begin to run until the entry of this decision quantifying the amount of the award.

An additional factor that must be taken into consideration in calculating the award of postjudgment interest in this case is Fleming Steel's deposit of $425,576.00 with the Clerk of Court on July 28, 2006 for deposit into an interest-bearing account. Schlosser is not entitled to postjudgment interest on the sum

18

deposited by Fleming Steel with the Clerk of Court pursuant to
Fed.R.Civ.P. 67 after the date of deposit. See Cordero v. Jesus-
Mendez, 922 F.2d 11 (1st Cir. 1990)(Postjudgment interest would
not accrue on monies deposited with court after date of deposit);
Flowers Transportation, Inc. v. M/V Peanut Hollinger, 94 F.R.D.
99 (E.D.Pa.1982)(Fed.R.Civ.P. 67 governs the procedure for
deposits in court; it provides that a party, upon notice to every
other party, and by leave of court, may deposit with the court
all or any part of the sum for which judgment is sought.  In
order to stop the accrual of interest, judgment debtor had to
make the judgment amount available to plaintiff or deprive itself
of the use of the money pending disposition of the appeal by the
plaintiff by depositing the money with the court).  Thus, the
postjudgment interest calculation in this case is a two-step
process.  First, postjudgment interest must be calculated on the
total of the principal amounts due to Schlosser from Fleming
Steel and Continental Casualty for the period commencing on July
14, 2006, the date the original Judgment Order was entered, and
ending on July 28, 2006, the date of the Court's Order granting
Fleming Steel's motion to deposit the sum of $425,576.00 with the
Clerk of Court under Fed.R.Civ.P. 67.  Second, postjudgment
interest must be calculated on the reduced principal amounts due
to Schlosser from Fleming Steel and Continental Casualty from
July 29, 2006 to the date of this decision.

19

Based on the foregoing, the postjudgment interest awards

against Fleming Steel and Continental Casualty are calculated as

follows:

**FLEMING STEEL -**

```
$354,646.43   Judgment Order dated 7/14/06 (Schlosser's costs)
+ 81,284.96   Prejudgment interest on Schlosser's costs
$435,931.39   Total principal amount
```

$435,931.39 x .038 years (7/14/06 to 7/28/06) x 5.27% compound interest[12] = $851.60

$10,355.39[13] x 2.23 years (7/29/06 to 10/21/08) x 5.27% compound interest = $1,256.58

```
$   851.60
+ 1,256.58
$ 2,108.18   Total Postjudgment Interest due from Fleming Steel
```

---

[12]The interest rate for any particular judgment is to be determined as of the date of the judgment, and that is the single rate applicable for the duration of interest accrual. <u>Kaiser Aluminum & Chemical Corp. v. Bonjorno</u>, 494 U.S. 827, 838 (1990). Based on the judgment date of July 14, 2006, the applicable rate to be applied in determining postjudgment interest in this case is 5.27%.

[13]The difference between the principal amount owed to Schlosser by Fleming Steel and the amount deposited with the Clerk of Court by Fleming Steel under Fed.R.Civ.P. 67 is $10,355.39.

20

**CONTINENTAL CASUALTY -**

$354,646.43      Judgment Order dated 7/14/2006 (Schlosser's costs)
+141,567.43      Prejudgment interest on costs (9/16/02 to 7/14/06)
                 and attorneys' fees and costs
$496,213.86      Total principal amount[14]

$496,213.86 x .038 years (7/14/06 to 7/28/06) x 5.27% compound
interest = $969.36

$70,637.86 x 2.23 years (7/29/06 to 10/21/08) x 5.27% compound
interest = $8,571.56[15]

$    969.36
+ 8,571.56
$  9,540.92      Total Postjudgment Interest due from Continental
                 Casualty

*William L. Standish*

William L. Standish
United States District Judge

Date: October $\underline{21}$ , 2008

---

[14]The award of attorneys' fees and costs against Continental
Casualty is excluded from the principal amount on which the
postjudgment interest due from Continental Casualty is calculated
because they were not quantified until this decision.  From this
date forward, however, the attorneys' fees and costs incurred by
Schlosser as a result of Fleming Steel's breach of the
subcontract on the Oceana project will be subject to postjudgment
interest until they are either paid by Continental Casualty or
the award is vacated by the Court of Appeals.

[15]The difference between the principal amount owed to
Schlosser by Continental Casualty for purposes of computing
postjudgment interest and the amount deposited with the Clerk of
Court by Fleming Steel under Fed.R.Civ.P. 67 is $70,637.86.

21